UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

INTERSTATE RESTORATION, LLC,   :
              : **MEMORANDUM DECISION AND**
       Plaintiff,  : **ORDER**
              :
   - against -   : 25-cv-3122-BMC
              :
              :
ENVIRONMENTAL CODE    :
CONSULTANTS, INC. and    :
CANARSIE GLASS & LOCK SERVICE, :
INC.,            :
              :
       Defendants. :

-------------------------------------------------------- X

**COGAN**, District Judge.

   A general contractor usually has a contractual relationship with subcontractors so that if a subcontractor fails to adequately perform and the property owner looks to the general contractor for redress, the general contractor can then seek indemnification from the subcontractor. That didn't happen in this case. There was no subcontract. Instead, the property owner, non-party Twin Parks, L.P. contracted directly with another company, defendant Canarsie Glass & Lock Service, Inc. ("Canarsie") for part of the work, even though that work was within the purview of the general contractor, plaintiff Interstate Restoration, LLC d/b/a First Onsite Property Restoration ("Onsite"). When Twin Parks claimed that the work was defective, Onsite chose to settle with Twin Parks and, in this action, pursue Canarsie for indemnification. But Onsite can't, because it has no legal relationship with Canarsie. Canarsie's motion to dismiss is therefore granted.

## SUMMARY OF COMPLAINT

Onsite is a general contractor.  On February 25, 2020, Twin Parks, L.P. retained Onsite to perform restoration and reconstruction work as general contractor on its property, which included the installation of windows throughout the property.

To carry out the work, Onsite entered into a written subcontractor agreement with defendant Environmental Code Consultants, Inc. ("ECC") to provide architectural plans for the installation of the project's windows.  Separately, Twin Parks retained defendant Canarsie to perform the actual installation of the project's windows.

Following completion of the project on September 1, 2021, the windows on the 14th floor began to leak significantly during heavy rainstorms – an issue not present on the property's other floors.  This caused significant damage to the 14th floor of the property, which in turn impacted and damaged the floors below.

Onsite retained an outside company to investigate the source of the water infiltration. The company concluded that the water infiltration issues were caused by the deficient design of the waterproofing system and improper installation of the windows, attributed to ECC's failure to provide adequate and complete design plans for the window installations and Canarsie's failure to properly measure the openings for the windows.

Onsite maintains it was neither negligent nor at fault for the water damage.  Even so, it alleges that Twin Parks held it liable as the general contractor and that it "was compelled" to forgo contractually anticipated payments totaling approximately $1,141,490.26 and to expend over $1,000,000.00 to remediate the issues.

2

Onsite brought this lawsuit against Canarsie and ECC, including a claim for common law indemnification against Canarsie.  Canarsie has moved to dismiss for failure to state a claim.

**DISCUSSION**

### I.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks, quotation, and citation omitted).  Said otherwise, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations and footnote omitted).

In conducting the above analysis, the Court must accept as true all the well-pled allegations contained in the complaint. Iqbal, 556 U.S. at 678.  But this tenet "is inapplicable to legal conclusions." Id.  "[D]etailed factual allegations" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).  At issue in this case, therefore, is whether Onsite plausibly pled all the factual elements of common-law indemnification.

### II.    Common Law Indemnification

Under New York law, "[a] party's right to indemnification may arise from a contract or may be implied based upon the law's notion of what is fair and proper as between the parties."

McCarthy v. Turner Const., Inc., 17 N.Y.3d 369, 374-75, 929 N.Y.S.2d 556 (2011) (internal quotation marks and citation omitted). "Common-law indemnification is generally available in favor of one who is held responsible solely by operation of law because of his relation to the actual wrongdoer." Id. at 375 (internal quotation marks and citation omitted). "[A] cause of action for common-law indemnification can be sustained only if: (1) the party seeking indemnity and the party from whom indemnity is sought have breached a duty to a third person, and (2) some duty to indemnify exists between them." Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A., 769 F. Supp. 2d 322, 329 (S.D.N.Y. 2011) (citing Highland Holdings & Zito I, L.P. v. Century/ML Cable Venture, No. 6-cv-181, 2007 WL 2405689, *4 (S.D.N.Y. Aug. 24, 2007)). But the "key element of a common law indemnification claim is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed the indemnitee by the indemnitor." Id. at 329-30 (citing Raquet v. Braun, 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237 (1997)) (internal quotation marks omitted).

"As a general matter, [t]hose who perform work, or deliver services or products, pursuant to a contractual or other commercial relationship owe duties of care and proper performance to those entitled to receive the benefit of their work or services or products." Id. at 328 (internal quotation marks omitted). "[A]bsent a special relationship between the parties, no duty is owed to the public at large or to those outside the class of people entitled to expect the actor's due care to them." Id. (citation omitted).

In the present case, because Twin Parks retained both Onsite and Canarsie as contractors, it follows that both owed Twin Parks a duty of care and proper performance. And accepting all of Onsite's well pled allegations as true, Canarsie breached its duty to Twin Parks by failing to properly install the windows and implement waterproofing measures.

But that does not mean that Canarsie had any duty to Onsite.  Onsite alleges that it was "held liable by Twin Parks as the general contractor and was compelled to forego contractually anticipated payments . . . and to expend over $1,000,000.00 to remediate the issues resulting from Defendant's negligence, errors or omissions."  Onsite maintains, however, that it was neither negligent nor at fault for the damages or conditions that led to the water infiltration, and Canarsie alleges Onsite was not vicariously liable for Canarsie's work, because it was Twin Parks who directly retained Canarsie, not Onsite.

The key element in this case is whether there exists a special relationship between Onsite and Canarsie such that Canarsie owed Onsite a separate duty to indemnify it.  Onsite acknowledges that no direct contractual relationship exists between itself (the purported indemnitee) and Canarsie (the purported indemnitor).  Even so, it argues that: (1) the functional equivalent of privity exists between itself and Canarsie; and (2) it was vicariously liable for the acts of Canarsie, and that either of these theories allow it to obtain indemnification from Canarsie.

### A.  Functional Equivalent of Privity

"In New York . . . even if the plaintiff is not a party to an underlying construction contract, a breach of contract claim may accrue upon completion of the construction where the plaintiff is not a 'stranger to the contract,' and the relationship between the plaintiff and the defendant is the 'functional equivalent of privity.'"  Stapleton v. Barrett Crane Design & Eng'g, 725 F. App'x 28, 30-31 (2d Cir. 2018) (cleaned up) (citing Town of Oyster Bay v. Lizza Indus., Inc., 22 N.Y.3d 1024, 1030, 981 N.Y.S.2d 643 (2013)).  "New York similarly limits professional negligence claims to situations where the relationship between the plaintiff and the defendant is

either 'one of privity of contract, or . . . the bond between them [is] so close as to be the functional equivalent of privity.'" Id. at 31 (citation omitted).

"Courts apply a three-part test to determine whether the functional equivalent of privity exists: '(1) awareness that the [work product was] to be used for a particular purpose or purposes; (2) reliance by a known party or parties in furtherance of that purpose; and (3) some conduct by the defendants linking them to the party or parties and evincing defendant's understanding of their reliance.'" Id. (citing Ossining Union Free Sch. Dist. v. Anderson LaRocca Anderson, 73 N.Y.2d 417, 425, 541 N.Y.S.2d 335 (1989)); see also Bri-Den Const. Co. v. Kapell & Kostow Architects, P.C., 56 A.D.3d 355, 355, 867 N.Y.S.2d 437 (1st Dep't 2008) (discussing "'functional equivalent of contractual privity' under the three prong test in Ossining" in the context of a breach of contract claim). "To satisfy the third prong of New York's functional equivalent of privity test, there must be some allegation of 'linking conduct' by the professional, that is, any word or action on the part of the professional directed to plaintiffs, so as to 'link' the professional to the non-client." Stapleton, 725 F. App'x at 31 (2d Cir. 2018) (cleaned up) (citing Houbigant, Inc. v. Deloitte & Touche LLP, 303 A.D.2d 92, 94 753 N.Y.S.2d 493 (1st Dep't 2003)). "[I]ndemnification has been imposed on this basis only where negligent misrepresentation or similar torts were alleged." Richards Plumbing & Heating Co. v. Washington Grp. Int'l, Inc., 59 A.D.3d 311, 312, 874 N.Y.S.2d 410 (1st Dep't 2009).

With respect to the first and second prongs of the test, Onsite refers to its allegations that the scope of its work "included the installation of numerous windows throughout the Property" and "Canarsie was expressly retained to perform the actual installation of the project's windows." The fact that Canarsie performed a task within Onsite's scope of work, it claims, is sufficient to establish that it "delegated a portion of its contractual duties – namely, window

installation – to Canarsie and that Canarsie undertook to perform those duties as a

subcontractor."  These allegations also purportedly show Canarsie "performed work integral to

Onsite's scope of responsibility and knew that its work was being done for Onsite's benefit."

The Court rejects this reasoning.  For one, Onsite does not allege Twin Parks retained

Onsite as the exclusive contractor responsible for all reconstructive work at the property.  Twin

Parks was free to delegate the work to whomever it chose without implicating Onsite, which it

did, when it separately retained Canarsie to perform the installation of the project's windows.

Additionally, nowhere in Onsite's complaint does it allege that Canarsie knew the work

was being done for Onsite's benefit, nor that Canarsie even knew of Onsite's existence or role in

the project at all.  Onsite fails to allege any kind of "linking conduct" by Canarsie directed to

Onsite that would satisfy the third prong of the functional equivalent of privity test.

Onsite never alleges it directed, controlled or took any part in Canarsie's installation of

the project's windows.  In fact, Onsite never alleges Canarsie and Onsite had any kind of

communication.  The most plausible inference is that Canarsie took on work from Twin Parks for

the purpose of being paid by Twin Parks, conferring the benefit of its work product on Twin

Parks, not Onsite.

Nor could Onsite assert a claim for common-law indemnification under this theory

because it has not alleged negligent misrepresentation or any similar tort by Canarsie.  See

Richards Plumbing & Heating Co., 59 A.D.3d at 312.

**B.  Vicarious Liability**

It is unclear what Onsite means when it posits its right to indemnification against

Canarsie on a theory of "vicarious liability."  Vicarious liability is a doctrine, usually applied in

the personal injury context, whereby a principal is held liable, not for its own wrongful acts, but,

by operation of law, for the acts of its agent.  It arose because agents are often not able to pay for the consequences of their own misconduct, and as a matter of social policy, the agent's liability is passed on to his principal, on whose behalf he was acting, and who is often in a better position to compensate an injured plaintiff.  See Feliberty v. Damon, 72 N.Y.2d 112, 117-18, 531 N.Y.S.2d 778 (1988) ("The doctrine of vicarious liability, which imputes liability to a defendant for another person's fault, rests in part on the theory that – because of an opportunity for control of the wrongdoer, or simply as a matter of public policy loss distribution – certain relationships may give rise to a duty of care, the breach of which can indeed be viewed as the defendant's own fault." (citing Kavanaugh v. Nussbaum, 71 N.Y.2d 535, 546, 528 N.Y.S.2d 8 (1988))).

The term "vicarious liability" is also more loosely used in the context of a duty imposed by statute without regard to whether the targeted person under the statute engaged in wrongful conduct.  See, e.g., Kelly v. Diesel Const. Div. of Carl A. Morse, Inc., 35 N.Y.2d 1, 6, 358 N.Y.S.2d 685 (1974) (referring to the nondelegable duty imposed on property owners and contractors to keep work premises safe under Labor Law §§ 240 and 241, as "vicarious"); Anderson v. Commack Fire Dist., 39 N.Y.3d 495, 500, 191 N.Y.S.3d 292 (2023) (explaining that General Municipal Law §§ 50-a, 50-b, and 50-c impose vicarious liability on a municipality for the negligence of its agents when they operate municipally-owned vehicles in the discharge of their duties); Graham v. Dunkley, 50 A.D.3d 55, 57, 852 N.Y.S.2d 169, 172 (2nd Dep't 2008) (explaining that Vehicle and Traffic Law § 388 imposes vicarious liability on vehicle owners for the negligent use of their vehicles by any person driving with the owner's permission).

When a principal is held vicariously liable, whether for the acts of its agent, or by statute without regard to fault, it has, at least in some contexts, a common law right of indemnification against its agent or the party who caused the actual harm.  See Lagares v. Carrier Terminal

Servs., Inc., 204 A.D.3d 1456, 167 N.Y.S.3d 275 (4th Dep't 2022).  In Lagares, a property owner

and its agent hired a contractor to perform replacement work on the property's roof.  One of the

contractor's employees sustained an injury while performing the work.  The court found both the

property owner and its agent vicariously liable for the employee's injuries under Labor Law §

240(1), which "holds owners and their agents absolutely liable for any breach of th[at] statute

even if the job was performed by an independent contractor over which [they] exercised no

supervision or control."  Id. at 1458 (citing McCarthy v. Turner Const., Inc., 17 N.Y.3d 369, 374,

929 N.Y.S.2d 556 (2011)) (internal quotation marks omitted).  The court, however, allowed the

property owner and its agent to seek common-law indemnification against the contractor,

because the property owner and agent established that they were not at fault for the dangerous

condition that caused the employee's injury, and it was the contractor who exercised actual

supervision over the injury-causing work.  Id. at 1459-1460.

　　　Here, there are no factual allegations in the complaint plausibly suggesting that Onsite

was liable to Twin Parks by statute, or because Canarsie was its agent.  This was a voluntary

liability that Onsite assumed in its general contract with Twin Parks.  Its liability cannot,

therefore, be considered "vicarious."  Having assumed the obligation to install the windows

without covering its exposure for that obligation – by, for example, insisting to Twin Parks that it

needed a separate subcontract with Canarsie, or disclaiming any liability for improper

installation of the windows – it had no relationship with Canarsie that could give rise to a duty to

indemnify.[1]

---

[1] It is also not clear why, in settling with Twin Parks, Onsite did not obtain an assignment of Twin Parks' claim against Canarsie.

Because its liability is not imposed by an agency relationship or by statute, Onsite's reliance on Sparks v. Essex Homes of WNY, Inc., 20 A.D.3d 905, 798 N.Y.S.2d 293 (4th Dep't 2005), is misplaced.  That was a personal injury case brought by an employee of a subcontractor under Labor Law § 241(6), which imposed a nondelegable duty on the property owner and general contractor to provide reasonable and adequate protection and safety for their workers and to comply with the safety rules promulgated by the New York Department of Labor.  See Ross v. Curtis-Palmer Hydro-Elec. Co., 81 N.Y.2d 494, 501-502, 601 N.Y.S.2d 49 (1993).  The subcontractor in Sparks directed and controlled all of the employee's work that led to the injury. In holding that the general contractor's liability was "vicarious," the court was referring only to the fact that its liability was by operation of law – that is, statutory.  In the instant case, again, not only is there no subcontract, but Onsite's liability to Twin Parks is direct, not imposed by operation of law through any statute or principal-agent relationship.[2]

## CONCLUSION

For the foregoing reasons, defendant Canarsie's motion to dismiss is granted.

**SO ORDERED.**

_Brian M. Cogan_
U.S.D.J.

Dated: Brooklyn, New York
         September 17, 2025

---

[2] For both its functional equivalent of privity and vicarious liability arguments, Onsite cites only to cases where the plaintiff and defendant were related to each other in the same chain of employment: owner-contractor-subcontractor. See E.C. Contracting, Inc. v. D.F. Pray, Inc., No. 19-civ-6813, 2022 WL 877809 (E.D.N.Y. Jan. 12, 2022); City Sch. Dist. of Newburgh v. Hugh Stubbins & Assocs., Inc., 85 N.Y.2d 535, 626 N.Y.S.2d 741 (1995); Rotterdam Square v. Sear-Brown Assocs. P.C., 246 A.D.2d 871, 668 N.Y.S.2d 278 (3rd Dep't 1998); R.H. Sanbar Projects, Inc. v. Gruzen P'ship, 148 A.D.2d 316, 538 N.Y.S.2d 532 (1st Dep't 1989); McCarthy v. Turner Constr., Inc., 17 N.Y.3d 369, 929 N.Y.S.2d 556.  Again, that is not the case here.